IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:13-CV-113-BO

| | |
|---|---|
| TERESA ANN COSTIN, Administrator for the Estate of LINWOOD NASH COSTIN, deceased, <br><br> Plaintiff, <br><br> v. <br><br> ALLY BANK CORP., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) **O R D E R** |

This matter is before the Court on the defendant's motion to dismiss [DE 22]. For the reasons stated herein, the defendant's motion is GRANTED and the remaining matter is REMANDED to Pender County Superior Court.

## BACKGROUND

Plaintiff brought suit on April 17, 2013 alleging violations of Article 9 of the Uniform Commercial Code, and the North Carolina Debt Collection Practices Act; unfair and deceptive practices; breach of contract; negligent infliction of emotional distress; and intentional Infliction of emotional distress. This matter was originally filed in Pender County Superior Court. On September 10, 2013, the Court denied plaintiff's motion to remand. On October 11, 2013, the Court denied defendant's motion for payment of costs and to stay.

On October 24, 2013 defendant filed the instant motion to dismiss all of plaintiff's claims except her breach of contract claim for failure to state a claim under FED. R. CIV. P. 12(b)(6).

**DISCUSSION**

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Id.* at 555, 570.

Defendant asserts that counts two through six of plaintiff's complaint fail to meet the standard set forth by Rule 12(b)(6). The Court considers them individually.

I.   UNFAIR AND DECEPTIVE TRADE PRACTICES ACT CLAIM.

Plaintiff's second claim for relief asserts a violation of N.C. Gen. Stat. § 75-1.1 which is the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). However, where allegedly abusive conduct pertains only to debt collection, the North Carolina Debt Collection Act ("NCDCA"), not the UDTPA, is the plaintiff's "<u>exclusive</u> remedy." *Ross v. Wash. Mut.*

2

*Bank*, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2009) (quoting *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 765 (M.D.N.C. 2003)). Plaintiff concedes that defendant's actions were "debt collection activities." [DE 1 at ¶ 83]. Because plaintiff has also alleged a complaint under the NCDCA, the Court must dismiss plaintiff's UDTPA claim as her exclusive remedy is found under the NCDCA.

II. DEBT COLLECTION ACT CLAIM.

Plaintiff's third claim for relief asserts that defendant made a "deceptive and misleading representation" to Mr. Costin and that its conduct constituted "an unconscionable means of collecting an alleged debt," in violation of the NCDCA, N.C. Gen. Stat. §§ 75-54 and 75-55. Specifically, plaintiff asserts the following acts violated the NCDCA: (1) defendant's misrepresentation that Mr. Costin's payment would halt repossession of his vehicle; (2) defendant's repossession of the vehicle after Mr. Costin's payment; and (3) defendant's demand that Mr. Costin pay an additional sum to defendant before defendant would return his wrongfully repossessed vehicle. [DE 1 at ¶¶ 84–86].

The NCDCA is part of the same chapter of the North Carolina General Statutes as the UDTPA (chapter 75), and accordingly "[a]n NCDCA claim also must meet the generalized requirements of UDTPA claims." *Ross*, 566 F. Supp. 2d at 479. These requirements are "(1) an unfair act, (2) in or affecting commerce, (3) that has proximately caused plaintiff injury." *Id.* (emphasis omitted). "[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Watson Elec. Const. Co. v. Summit Cos., LLC*, 587 S.E.2d 87, 95 (N.C. App. 2003) (citation omitted).

Here, plaintiff's first two actions that she alleges constitute a violation of the NCDCA are actions that arise to no more than a breach of contract. Plaintiff alleges that Mr. Costin and

3

defendant had an oral agreement and that defendant breached that agreement. That is a breach of contract and cannot serve as the basis for a NCDCA claim. The third action plaintiff alleges, demanding a sum to return the repossessed vehicle is not misleading or deceptive. Per the contract between Mr. Costin and defendant, defendant had the right to determine the redemption amount following repossession. [DE 23 Ex. A at § 4(e)]. Even were the action wrongful, the most it could amount to is a breach of contract which could not serve as the basis for an NCDCA claim. Accordingly, plaintiff's third claim must be dismissed.

### III.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

Plaintiff's fourth claim for relief alleges that defendant's repossession of Mr. Costin's vehicle constituted intentional infliction of emotional distress ("IIED"). The elements of the tort of IIED are: "(1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981). Plaintiff's complaint satisfies none of these elements.

First, the bank repossession of a vehicle after a borrower misses three payments is not "extreme and outrageous." To be "extreme and outrageous" a defendant's conduct must "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stamper v. Charlotte-Mecklenburg Bd. of Educ.*, 544 S.E.2d 818, 820 (N.C. App. 2001) (citations omitted). The Court decides whether the behavior is "extreme and outrageous," because it is a question of law. *Id.* Plaintiff's allegation that the defendant promised not to repossess the car upon payment and then did so anyways does not constitute "extreme and outrageous" behavior. Bank mistakes are unfortunately common and are not considered "utterly intolerable" in our society.

4

Second, there is no allegation in the complaint that defendant engaged in "calculated intentional conduct" to cause emotional harm to Mr. Costin. *Von Hagel v. Blue Cross & Blue Shield of N.C.*, 370 S.E.2d 695, 699–700 (N.C. App. 1988) (citation omitted). The only intent shown by the complaint is that defendant intended to reclaim the vehicle in accordance with its financing agreement. There are also no alleged facts which support plaintiff's claim that defendant acted with reckless indifference to Mr. Costin.

Third, to support a claim of intentional infliction of emotional distress, plaintiff must show "severe emotional distress," which is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992). "It is only where it is extreme that the liability arises." *Id.* Plaintiff does not have a remedy for loss of sleep, *see Johnson v. Scott*, 528 S.E.2d 402, 405 (N.C. App. 2000), nor short term depression, *see Wrenn v. Byrd*, 464 S.E.2d 89, 92 (N.C. App. 1995). Plaintiff's conclusory allegations that Mr. Costin had "sleepless nights, depression, and anxiety" therefore cannot support her claim. Accordingly, plaintiff's fourth claim must be dismissed.

IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM.

Plaintiff's fifth claim is that defendant's alleged actions constituted negligent infliction of emotional distress ("NIED"). To state a claim for NEID, a plaintiff must allege that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 395 S.E.3d 85, 97 (N.C. 1990). Here plaintiff has only alleged intentional misconduct by defendant, and the conclusory

5

allegation that "defendant negligently engaged in the above-described actions" cannot save the claim from dismissal. *See Mitchell v. Lydall, Inc.*, No. 93-1374, 1994 U.S. App. LEXIS 2177, at *9–10 (4th Cir. Feb. 10, 1994) (affirming 12(b)(6) dismissal where the "complaint contains merely a single, conclusory allegation that [defendant] was negligent," and "the material factual allegations charge nothing but intentional acts by" defendant).

Additionally, plaintiff's NEID claim fails because plaintiff has not alleged that "the distress was a proximate and foreseeable result of the defendant's negligence." *Roblee v. Budd Servs.*, 525 S.E.2d 847, 849 (N.C. App. 2000). Repossession of a vehicle does not, in the ordinary course, cause the vehicle's owner to suffer severe emotional distress. It is not foreseeable that a repossession that breached an oral agreement would be so stressful as to trigger a heart attack. Plaintiff does not allege any facts to suggest that defendant was or should have been aware that repossessing Mr. Costin's vehicle would cause him to suffer from a severe disabling emotional or mental condition, let alone cause his death.

Finally, plaintiff has failed to allege that Mr. Costin's emotional distress was of the requisite severity. The type of emotional distress needed to support a NEID claim is the same as that need to support an IIED claim. *Waddle*, 414 S.E.2d at 27. As discussed in the previous section, plaintiff has failed to adequately allege this element. Accordingly her NEID claim must be dismissed.

V.    UCC ARTICLE 9 CLAIM.

In her sixth claim for relief, plaintiff alleges that defendant "violated certain provisions of Article 9, Part 6 of Chapter 25 of the North Carolina General Statutes." [DE 1 at ¶ 100]. This part of the Uniform Commercial Code includes 28 separate sections, each with numerous subparts. *See* N.C. Gen. Stat. §§ 25-9-601 to 25-9-628. Plaintiff's complaint fails to state which provision

6

or provisions of those 28 sections defendant allegedly violated. Further, the remedy provision cited by plaintiff creates liability only for "any loss caused by a failure to comply with this Article." *See* N.C. Gen. Stat. § 25-9-625. In addition to failing to allege any particular failure to comply with the article, plaintiff's complaint also fails to allege any loss caused by such a failure. To the contrary, the complaint acknowledges that Mr. Costin's vehicle was returned to him shortly after the repossession without any additional payment being required. (DE 1 at ¶¶ 58–59].

Additionally, plaintiff's claim that defendant violated UCC Article 9 is based on a faulty premise. In support of this claim plaintiff alleges that defendant repossessed Mr. Costin's vehicle even though he was not in default. [DE 1 at ¶ 100]. But the facts alleged earlier in the complaint reveal that Mr. Costin missed payments in March, April, and May of 2011. [DE 1 at ¶ 13, 16]. UCC Article 9 leaves it to the parties to define default and provides that once default occurs, the secured party has the right to take possession of the collateral. *See* N.C. Gen. Stat. § 25-9-609(a)(1). Here, the financing agreement defines default as not paying any payment on time. [DE 23 Ex. A]. Accordingly, Mr. Costin was in default at the time of repossession and defendant could not have violated Section 9 of North Carolina's UCC. Therefore plaintiff's sixth claim must be dismissed.

VI. THIS COURT'S JURSIDICTION.

Having dismissed all but one of plaintiff's claims for lack of subject matter jurisdiction, the Court now considers whether it should continue to exercise jurisdiction over what is now a very small state law claim. On September 10, 2013, the Court denied plaintiff's motion to remand on the premise that, if successful on all claims, the amount in controversy in this diversity jurisdiction case exceeded $75,000. [DE 19]. Plaintiff argued that her claims did not

exceed $75,000 even including counts two through six. At the time of the motion to remand, defendant valued plaintiff's breach of contract claim at $1,300. [DE 19 at 5]. It is clear to this Court that without counts two through six of the complaint, plaintiff's claim is valued at well under $75,000.

"[I]f some event subsequent to the [notice of removal] reduces the amount in controversy, such as the dismissal of one count based on the defendant's answer, the court must then decide in its discretion whether to retain jurisdiction over the remainder of the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995). "[The Court's opinion in *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966),] strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent state claims, the court has discretion to remand the case to state court." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988)[1].

The Fourth Circuit provides guidance to help decide whether to exercise its discretion to retain jurisdiction. The Court must consider a variety of equitable factors, including: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. Moreover, this Court should consider the "amount of time and energy that has already been expended and decide whether it might be more efficient to simply retain jurisdiction." *Id.* at 112. After weighing these factors, the Court finds that remand is the proper course of action here. Very little, if any, additional research would need to be performed by the parties, and any additional research required would need to be performed regardless of the forum. Therefore, remanding this case to state court would not be unduly inconvenient or unfair to either party. Additionally, judicial economy will be served by remand because the issues in this case have been narrowed in federal court and the

---

[1] The Court recognizes that *Carnegie-Mellon* was decided before 28 U.S.C. § 1367 was adopted, nevertheless, the case is useful in analyzing when a district court might want to use its discretion to remand state law claims.

8

remaining claim is in a posture to be readily resolved by state court. It would not serve to benefit federal policy, with its $75,000 threshold amount, nor judicial economy to retain this case in federal court. Accordingly, the case is remanded to Pender County Superior Court for resolution of the sole remaining claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is GRANTED. Counts two through six of the complaint are DISMISSED with prejudice. This action is REMANDED to Pender County Superior Court for resolution of plaintiff's sole remaining claim.

SO ORDERED.

This the 13 day of January, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE